(36 Misc. Rep. 1.)

### In re WALLACE.

(Supreme Court, Special Term, Albany County. September, 1901.)

**1. PRIMARY ELECTIONS—CITY COMMITTEE—NOTICE OF ELECTION—BALLOTS.**

Laws 1899, c. 473, § 9, relating to primary elections, provides that each party shall have a general committee for each county, except in the city of New York. Laws 1901, c. 167, § 2, amends said section by providing that in each city other than New York, if desired by the majority of the general committee, there shall be a city committee elected from the wards, which shall have power to perfect its organization under such rules as the committee may prescribe affecting such city and the wards thereof. *Held*, that a city committee duly organized under such amendment was independent of the county committee as to party affairs in such city, and that it had the power to fix the representation of delegates to a city convention on a different basis from that fixed by the county committee, and the custodian of primary records properly prepared his notice of an ensuing primary election and the ballots for such an election in accordance with the statement filed with him by the city committee stating the number of delegates to the city convention.

**2. STATUTES—CONSTRUCTION.**

Where an amendment to a statute is inconsistent with an older provision therein, the older provision must give way to the amendment.

Application of John Wallace to compel Patrick E. McCabe, custodian of primary records of the county of Albany, to publish the notice required by the primary law, and to prepare a sample ballot for the Democratic party in the city of Albany. Application denied.

James J. Farren, for petitioner.
Jacob L. Ten Eyck, Niele F. Towner, and E. Countryman, for respondent.

CHESTER, J. The sole question presented by this application for determination is whether the general committee of the Democratic party for the county of Albany or the city committee of the city of Albany has the power, under the primary election law, to fix the number of delegates which shall represent the various wards of the city in the city convention. Upon the passage of the primary election law in 1898 (chapter 179), the Democratic general committee of the county adopted a rule continuing the then existing basis of representation in conventions. This provided for 4 delegates from each ward, making 76 for the entire city. No change of this rule has since been made by this committee. Prior to 1901, the first sentence of subdivision 1 of section 9 of the primary election law read as follows:

"Each party shall have a general committee for each county, except that in the city of New York there may be, in lieu of, or in addition to, a general committee for each county wholly therein, a general city committee or general borough committees, or both, as the rules and regulations of the party may prescribe" (as amended Laws 1899, c. 473, § 9).

But by section 2 of chapter 167, Laws 1901, the sentence above quoted was amended by adding thereto:

"And except that in each city other than said city of New York, if it be desired by a majority of the members of such general committee elected

from the wards of such city, there shall be for such city a city committee
to consist of such members so elected from such wards, who shall have
power to perfect their own organization under such rules and regulations
as they may prescribe for the conduct of the affairs of such party affecting
such city and the wards thereof."

Pursuant to this amendment, the members of the general com-
mittee of the county, elected from the several wards of the city of
Albany, met and organized as a city committee. The latter com-
mittee has passed a resolution fixing the basis of representation
from the several wards to city conventions at 1 delegate for each
100 votes polled in each ward for the Democratic candidate for gov-
ernor at the last preceding general election. The effect of this, if
valid, is to authorize a representation varying from 3 in the Eight-
eenth to 10 in the Twelfth ward, and a total of 115 from all the
wards of the city, instead of 4 from each ward, as authorized by
the general county committee. The chairman of the county com-
mittee, in compliance with subdivision 4 of section 4 of the primary
election law (as amended Laws 1899, c. 473, § 4, subd. 4), has filed
with the custodian of primary records a statement of the number
of delegates from the several wards to the city convention fixed
upon by his committee, and the vice chairman, in the absence of
the chairman, of the city committee has filed with such custodian a
like statement of the number of such delegates fixed upon by his
committee. The custodian has acted upon the statement filed by
the city committee, and ignored that filed by the county committee,
in preparing and publishing the official notice of the ensuing primary
election and in preparing the sample ballots therefor. The petition-
er insists that in so doing the custodian has not complied with the
law, and seeks by this application to compel him to give the official
notice and to prepare the sample ballots based upon the statement
filed with him by the chairman of the general county committee.
The claim is based upon section 10 of the primary election law
(as amended Laws 1899, c. 473, § 10), which requires delegates
to conventions to be apportioned upon the number of votes cast
for the party candidate for governor at the last preceding general
election, "except that in any county which is not wholly included
within the boundaries of a city of the first class, the general com-
mittee of the party, may, by its rules and regulations, continue any
existing system of representation in conventions."

If the term "general committee," used in this exception to the
general method of apportionment provided for in section 10, means
the general committee of the county, there is an apparent incon-
sistency between the provision authorizing such committee to con-
tinue the existing system of representation and the provision con-
tained in the amendment of 1901, authorizing the organization of
a city committee "under such rules and regulations as they may
prescribe for the conduct of the affairs of such party affecting such
city and the wards thereof." If there is an inconsistency here be-
tween the older and the later provisions of the statute, the well-
settled rule that the earlier must give way to the later provisions
applies, because the latest expression of the legislative intent must

control. But the petitioner cites the equally well settled rule of statutory construction that the original statute, with all its amendments, must be read together, and be viewed as one act passed at the same time. In so doing, however, force must be given to still another rule, and that is that effect must, if possible, be given to all the provisions of the statute. Bearing these rules in mind, I think such a construction may fairly be given to this statute as to relieve it from any substantial inconsistencies between its various provisions and as will give effect to all its provisions. This requires an examination of the meaning of the terms "general committee" and "city committee" as used in the statute, and of the general intention of the legislature in enacting the amendment. Prior to the amendment, New York was the only city having the right to a city committee exercising the powers of a general or county committee with respect to party affairs in the city. This was under an exception to the general rule that each party should have a general committee for each county. The amendment created another exception in favor of any other city where it was desired by a majority of the members of the general county committee elected from the wards of such committee to organize a city committee under an express grant of power to organize under such rules and regulations as they may prescribe for the conduct of party affairs affecting such city and the wards thereof. The evident intention of this provision was to confer upon the city committee the same power with reference to city and ward conventions as had previously been exercised by the general or county committee, and to give to the city committee, instead, exclusive control over party affairs in the city. The effect of it was to make the city committee the general committee for city affairs, while the county committee remained the general committee for county affairs. If this is not so substantially, no force is given to the amendment, and the grant of power to the city committee contained in the amendment is practically meaningless.

This construction is also supported by numerous minor changes made by the amendment in the same subdivision. For instance, in the old law it was provided that "on the day fixed by the rules and regulations of the party the members of each county or general committee shall meet and organize" (Laws 1899, c. 473, § 9, subd. 1). The amendment (Laws 1901, c. 167, § 2) changes this to read, "On the day fixed by the rules, regulations, constitution or by-laws of the party, the members of each general county committee or city committee shall meet and organize," thereby, in effect at least, designating the city committee as well as the county committee as a general committee. The amendment also adds the words "or city" four times (as indicated below by italics) in the provision immediately following the one last referred to, whenever a reference is made to a county committee in the subdivision. The statute as amended now reads:

"They may proceed to make and adopt rules and regulations, but unless so adopted, the rules or regulations adopted by the last preceding county *or city* committee of said party in said county *or city* shall remain in full

force and effect until repealed or amended in accordance with the provisions of this act. * * * Each county *or city* committee and the officers thereof shall have all the power and authority and shall perform all the duties, in respect to the nominations of officers to serve at general elections, conferred upon the general committee, the county committee, the city committee, the executive committee, or the officers thereof, given to any party in such *city or* county by section twelve of the election law."

It may be also said in support of this construction that a county committee is referred to in the statute indiscriminately as a "general committee," a "general county committee,". a "county committee," and a "county or general committee"; and a city committee is also referred to in the statute as a "general city committee" and a "city committee"; and both are also referred to together as a "general county and city committee," and as a "county and city committee," and in the alternative as "general county or city committee," and "county or city committee," and "committee of the county or city"; many of these references being in the subdivision of section 9 as amended by the act of 1901. With these references to the statute before us, I think it is altogether clear that the term "general committee" as used in section 10, upon which the petitioner relies, is made by the amendment of 1901 to mean the general city committee, and that the requirement contained in subdivision 4 of section 4 that the chairman of the general committee of each party shall file with the custodian of primary records a statement of the number of delegates to be selected to conventions, means the chairman of both the general county committee and the chairman of the general city committee; and I think this is so notwithstanding the definition contained in section 2 of the original law (Laws 1898, c. 179) stating that the term "general committee" shall apply to the county committees in the various counties of this state, for the section containing this definition also provides that the "terms used in this act shall, for the purposes of this act, have application as provided in this section, unless other meaning is clearly apparent from the language or context, or manifest intent." I think the manifest intent of the amendment has been to change the meaning of the term "general committee" as originally defined by the act. It follows that the custodian of primary records was correct in basing his official notice and sample ballot upon the statement filed by the vice chairman of the city committee, and that, therefore, this application should be denied; but, it being a new question, it should be denied without costs.

Application denied, without costs.